USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/20/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUIS FERNANDO BELTRAN MARROQUIN,

                Petitioner,

-against-

KENNETH GENALO, et al.,

                Respondents.

24-CV-06376 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

    Petitioner Luis Fernando Beltran Marroquin fled to the United States from El Salvador in 2015. Since April 17, 2023, he has been detained at the Orange County Jail. On August 23, 2024, Petitioner filed a Petition for a Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 seeking a bond hearing in which the Government bears the burden of justifying Petitioner's ongoing detention and the presiding immigration judge is required to consider alternatives to detention and Petitioner's ability to pay. The parties have stipulated that Petitioner is entitled to a bond hearing in which the Government bears the burden of proof. However, the parties disagree on the circumstances in which the presiding immigration judge should be required to consider alternatives to detention and Petitioner's ability to pay. Presently before the Court is Petitioner's request for an order requiring the presiding immigration judge to consider whether any danger to the community Petitioner may pose could be mitigated by reasonable conditions of supervision or monetary bond. For the reasons set forth below, Petitioner's request is GRANTED.

1

# BACKGROUND

## I. RELEVANT FACTS[1]

Petitioner is a native of El Salvador who came to the United States in 2015 when he was 18 years old. Pet. ¶¶ 18–19. While in the United States, Petitioner obtained employment cleaning offices and in construction. *Id.* ¶ 20. On April 24, 2018, Petitioner was arrested because he was alleged to be a member of the gang MS-13. *Id.* ¶ 23. The same day, Petitioner was charged as removable pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i). Dkt. No. 14 ¶ 8.

On August 8, 2018, Petitioner appeared for a bond hearing and removability proceedings. *Id.* ¶ 10. In advance of the hearing, the Government put forth evidence that sought to connect Petitioner to MS-13. Pet. ¶ 28. At the hearing, Petitioner testified that the evidence submitted by the Government did not have any connection to MS-13. *Id.* The immigration judge presiding over the hearing credited Petitioner's testimony and found that Petitioner was not a danger to the community. The immigration judge ordered Petitioner's release on bond. *Id.* ¶ 29.

On July 18, 2021, Petitioner was arrested by the Hempstead Police Department. He was charged with Assault in the Second Degree (NYPL § 120.05(2)), Menacing in the Second Degree (NYPL § 120.14(1)), and Criminal Possession of a Weapon in the Fourth Degree (NYPL § 265.01(2)). Dkt. No. 14 ¶ 13. The police department records from Petitioner's arrest state that he "menaced" an individual with a machete and subsequently threw the machete. Dkt. No. 14 ¶ 13. Petitioner claims that the events leading to his arrest transpired because he witnessed a friend being threatened by another man and stepped in to protect him. Pet. ¶ 31. As to the

---

[1] The following facts are taken from the Petition, Dkt. No. 1, ("Pet") as well as the Declaration of Deportation Officer William D. Marrow (Dkt. No. 14) submitted by Respondents (the "Government").

machete, Petitioner testified that he had carried it "in order to seek a sense of safety and protection after being the victim of a violent attack himself" and disputes that he used it to menace another individual. Dkt. No. 16 at 6. On advice from his criminal defense attorney that doing so would avoid consequences for his asylum case, Petitioner pleaded guilty to Attempted Reckless Assault (NYPL § 110-120.05(04)) even though he denies the underlying conduct. Pet. ¶ 32. Petitioner was sentenced to five years of probation. *Id.*

On April 17, 2023, Petitioner was arrested by ICE as he was leaving a probation check-in and transferred to the Orange County Jail. *Id.* ¶ 33. On August 9, 2023, Petitioner appeared for a bond hearing before an immigration judge at the Varick Street Immigration Court. *Id.* ¶ 34. At the hearing, the immigration judge placed the burden on Petitioner to prove that he was not a danger to the community. *Id.* ¶ 36. The immigration judge found that Petitioner did not meet his burden and denied bond. *Id.* Petitioner appealed the decision to the Board of Immigration Appeals, which affirmed the denial. *Id.* ¶ 37.

Petitioner had also applied for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* ¶ 42. Petitioner's application was denied by the immigration judge, a decision that the Board of Immigration Appeals affirmed on January 12, 2024. *Id.* ¶ 38. On April 24, 2024, the Government agreed to vacate Petitioner's removal order. *Id.* ¶ 42. Petitioner's removal proceedings remain ongoing. Dkt. No. 20.

On August 23, 2024, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Pet. at 1. Petitioner requested that the Court direct the Government to immediately release Petitioner or, in the alternative, provide him with an individualized hearing in which (i) the Government bears the burden of establishing by clear and convincing evidence that Petitioner's continued detention is justified; (ii) the adjudicator meaningfully considers

3

alternatives to detention and Petitioner's ability to pay if setting a monetary bond; and (iii) the adjudicator does not give undue weight to "uncorroborated criminal allegations." *Id.* at 28.

On September 19, 2024, the parties stipulated that the Government will provide Petitioner with a bond hearing in which the Government bears the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a flight risk. Dkt. No. 12. The parties further stipulated that, in determining whether Petitioner is a flight risk, the immigration judge must consider whether such a risk may be mitigated by reasonable conditions of supervision or monetary bond, and that any bond decision must consider Petitioner's ability to pay. *Id.* The parties disagreed, however, on whether the immigration judge must also consider, when determining if Petitioner poses a danger to the community, whether the danger may be mitigated by reasonable conditions of supervision or monetary bond. *Id.* That dispute is the sole issue currently before the Court.

## DISCUSSION

### I. LEGAL STANDARD

Petitioner's detention is authorized by 8 U.S.C. § 1226(a), which allows "an alien" to be "arrested and detained pending a decision on whether the alien is to be removed from the United States." To obtain release on bond under § 1226(a), a non-citizen "must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). Petitioner moves for relief pursuant to 28 U.S.C § 2241. Under 28 U.S.C § 2241(c)(3), federal courts may grant a writ of habeas corpus to a petitioner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2241(c)(3). "Habeas corpus . . . is an adaptable remedy, the precise application and scope of which changes depending upon the

4

circumstances." *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020) (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008)).[2]

## II. ANALYSIS

### A. Due Process Requires the Immigration Judge to Consider Alternatives to Detention When Assessing Dangerousness as Well as Risk of Flight

Petitioner argues that due process requires an immigration judge to consider alternatives to detention when evaluating whether Petitioner poses a danger to the community.[3] For such immigration-related due process challenges, the Second Circuit has advised that the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), provide the appropriate framework for assessing "what process is due to noncitizens in removal proceedings." *Black v. Decker*, 103 F.4th 133, 147 (2d Cir. 2024). The *Mathews* factors are "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Velasco Lopez*, 978 F.3d at 851 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Each of these factors weighs in favor of Petitioner.

The first factor weighs in Petitioner's favor because his "interest in being free from imprisonment" is "the most significant liberty interest there is." *Velasco Lopez*, 978 F.3d at 851. Following Petitioner's 2023 bond hearing, the immigration judge ordered Petitioner's continued detention on the grounds that he failed to demonstrate that he did not pose a danger to the

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

[3] As noted above, the Government has conceded this point if the immigration judge's detention decision is based on the Government establishing that the Petitioner is a flight risk.

5

community. Pet. ¶ 36. Thus, it is reasonable to assume that, in a renewed bond hearing where the Government bears the burden, the question of whether Petitioner poses a danger to the community and, if so, what consequences flow from that for his continued detention, directly implicates his liberty interest. Because Petitioner's "interest in freedom from detention" is "an interest of the highest order," the first factor undoubtedly weighs in favor of Petitioner. *Francis v. Fiacco*, 942 F.3d 126, 143 (2d Cir. 2019).

The second factor also weighs in Petitioner's favor because the additional procedural safeguards he seeks would protect against the erroneous deprivation of his liberty. In assessing this factor, "[t]he only interest to be considered . . . is that of the detained individual[]." *Black*, 103 F.4th at 152. Here, requiring an immigration judge to make a binary choice between determining that Petitioner poses a danger to the community such that he must be detained and determining that Petitioner poses no danger such that he can be fully released could erroneously deprive Petitioner of his liberty. Such a binary choice, without consideration of alternative options or ability to pay a bond, could lead to the wrongful detention of a non-citizen who may have a criminal record or other indicia of potential dangerousness but, based on an individualized assessment, can be safely released under certain conditions without posing a danger to the community.

The court's decision in *Cantor v. Freden*, 761 F. Supp. 3d 630 (W.D.N.Y. 2025) provides a useful illustration of this principle. In *Cantor*, the court explained that "a noncitizen with a history of drunk driving might well pose a serious danger to the community. 'But that danger would be ameliorated if the noncitizen were released on the condition that he or she not drive a car or that he or she wear a remote alcohol monitoring device.'" *Id.* at 637–38 (quoting *Davis v. Garland*, No. 22-CV-000443 (LJV), 2023 WL 1793575, at *7 (W.D.N.Y. Feb. 7, 2023)).

6

Similarly, for Petitioner, who was found to be a danger to the community primarily for his possession of a machete, *see* Dkt. No. 1-1 at 3, an immigration judge could plausibly find that any danger he poses to the community based on that possession could be ameliorated by an order prohibiting Petitioner from possessing a dangerous weapon, or the imposition of a curfew or other liberty restrictions short of incarceratory detention. That Petitioner was offered a significantly reduced plea bargain and sentenced to 5 years' probation rather than jail time in his criminal proceeding related to the machete further illustrates the plausibility of this determination.[4]

Furthermore, numerous courts in this district have found that failing to consider alternatives to detention when assessing dangerousness violates an individual's due process rights. *See Fernandez Aguirre v. Barr*, No. 19-CV-07048 (VEC), 2019 WL 4511933, at *5 (S.D.N.Y. Sept. 18, 2019) (finding that the an immigration judge who did not consider "whether non-incarceratory measures, such as home detention, electronic monitoring, and so forth, could mitigate any danger that Petitioner posed to the safety of the community" had "failed to comply with the requirements of due process."); *Hernandez-Aviles v. Decker*, No. 20-CV-07636 (ER), 2020 WL 5836519, at *2 (S.D.N.Y. Oct. 1, 2020) ("In this case, *procedural* due process requires an examination of whether detention is necessary to safeguard the community, given available alternatives and the manner in which [Petitioner] presents a danger."); *Roman v. Decker*, No. 20-CV-6752 (AJN), 2020 WL 5743522, at *4 (S.D.N.Y. Sept. 25, 2020) (finding that the due process clause requires a consideration of "adequate alternatives to detention" in the context of

---

[4] The Court's analysis in no way cabins the discretion of an immigration judge in any renewed bond hearing. This assessment is only to illustrate that a failure to consider whether any alternatives to detention would satisfy the Government's interest in protecting the public could result in unwarranted continued detention.

determining both whether an individual poses a flight risk and a danger to the community). Concerns about the deprivation of Petitioner's due process rights are particularly heightened here because Petitioner has now been detained for a period of 30 months and "as the period of confinement grows, so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." *Velasco Lopez* 978 F.3d at 853; *cf. Zadvydas v. Davis*, 533 U.S. 678, 690–91, (2001) ("[W]e have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections."). Accordingly, the need for procedural due process protections—including considerations of alternatives to detention when determining whether Petitioner can safely be released—is high at this stage of detention. Petitioner risks the erroneous deprivation of his liberty absent those protections.

This conclusion is guided both by general principles of due process and by the requirements for pre-trial detention in the criminal context. In criminal cases, courts are required by statute to determine "that no condition or combination of conditions will reasonably assure the appearance of the person as required *and the safety of any other person and the community*" before ordering pretrial detention. 18 U.S.C. § 3142(e)(1) (emphasis added). The statute does not distinguish between the context in which alternatives to detention must be considered. Instead, it requires courts to consider alternatives to detention for purposes of both ensuring an individual's appearance and maintaining community safety. Of course, the statute does not control the decisions of immigration judges in the context of immigration detention proceedings. However, Courts in this district have viewed the statute as instructive in determining due process requirements in the context of immigration proceedings. *See Fernandez Aguirre v. Barr*, No. 19-CV-07048 (VEC), 2019 WL 4511933, at *5 (S.D.N.Y. Sept. 18, 2019) (explaining that a court

8

order requiring an immigration judge to consider alternatives to detention "was intended to track the framework for pretrial detention in the criminal context, where the purpose of considering alternatives is to determine whether measures less intrusive than detention can achieve the same goal (reasonably assuring the safety of the community).").

The third and final *Mathews* factor also weighs in Petitioner's favor. "The Government has identified its regulatory interests in detaining noncitizens under § 1226(a) as (1) ensuring that noncitizen[s] do not abscond and (2) ensuring they do not commit crimes. The importance of these interests is well-established and not disputed." *Velasco Lopez*, 978 F.3d at 854. However, the Government also has a "paramount" interest "in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Black*, 103 F.4th at 154. If Petitioner does not pose a danger to community or if any potential danger could be mitigated through alternatives to detention, then detaining Petitioner would "serve[] no [legitimate] purpose." *Id*. Accordingly, requiring an immigration judge to consider alternatives to detention advances the Government's interest in avoiding unnecessary or improper detentions.

### B.    *Black v. Decker* is not to the Contrary

Finally, the Government argues that, pursuant to the Second Circuit's decision in *Black v. Decker*, due process does not require an immigration judge to consider alternatives to detention when assessing dangerousness. Dkt. No. 15 at 9–10. The Court disagrees. First, *Black* addressed the rights of non-citizens presumptively or mandatorily detained under 8 U.S.C. § 1226(c). *Black*, 103 F.4th at 143. Second, the discussion in *Black* about alternatives to detention and the amount of a bond was limited to a district court order that concerned only risk of flight, not dangerousness, and considered alternatives to detention and the amount of a bond only in the context of measures that might assure the detainees return to court. *Id*. at 158. Third, under *Black*'s own conceptual framework, as discussed above, there is no logical reason why the

9

Government's burden on dangerousness should be treated differently than risk of flight, at least when it comes to alternatives to detention. *Black* clearly held that, at a renewed bond hearing, the burden is on the Government to *justify an alien's continued detention* by clear and convincing evidence; inherent to the justification for continued detention is that there are no conditions short of detention that could meet the Government's interests in protecting the public and assuring the alien's return to court. *Id*. at 155–56. Fourth, every district court in this Circuit that has considered the very question presented here since *Black*—whether *Black* excludes consideration of alternatives to detention when assessing whether the Government has met its burden to justify continued detention based on clear and convincing evidence of dangerousness—has concluded that it does not, for substantially the reasons outlined here. *See, e.g., M.P.L. v. Arteta*, 25-CV-05307 (VSB) (SDA), 2025 WL 2938993 at *6 (S.D.N.Y. Oct. 16, 2025) (collecting cases). This Court sees no reason to diverge from this consensus.

## CONCLUSION

For the reasons set forth above, the Petition for a Writ of Habeas Corpus is GRANTED. Pursuant to the parties' stipulation, the Government shall, within 10 days of this order, provide Petitioner with an individualized bond hearing before an immigration judge at which the Government bears the burden of establishing, by clear and convincing evidence, that Petitioner's continued detention is necessary, either because he poses a danger to the community or is a flight risk. In deciding whether the Government has met its burden to justify continued detention, the immigration judge must consider whether any reasonable conditions of supervision or a monetary bond can address any danger or risk of flight and satisfy the Government's interests short of continued detention. If the immigration judge sets a monetary bond as part of this

determination, the judge must consider Petitioner's ability to pay in determining the appropriate bond amount.[5]

Dated: November 20, 2025
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

---

[5] As to Petitioner's final request, that the Court direct the immigration judge not to give "undue weight" to "uncorroborated criminal allegations," Pet. at 28, the Court declines to micro-manage the factors the immigration judge can consider, or the weight to assign to those factors, in assessing whether the Government has met its burden as described above. Due process requires a "neutral decisionmaker" to decide based on "clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person," *Foucha v. Louisiana*, 504 U.S. 71, 81(1992); all evidence can be considered in that assessment, with the decider giving each piece of evidence whatever weight it deserves in light of all the circumstances.