USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/15/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUIS FERNANDO BELTRAN MARROQUIN,

Petitioner,

-against-

KENNETH GENALO, et al.,

Respondents.

24-CV-06376 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Before the Court is Petitioner's motion to enforce this Court's November 20, 2025 Order granting Petitioner's Petition for a Writ of Habeas Corpus. *See* Dkt. No. 24. For the reasons explained below, Petitioner's motion is DENIED.

## BACKGROUND

### I. Procedural History

Petitioner Luis Fernando Beltran Marroquin is a native of El Salvador who has been present in the United States since 2015, when he was 18 years old. Dkt. No. 1 ("Pet.") ¶¶ 18–19. The Court assumes general familiarity with this case's factual background, which is set forth in detail in the Court's November 20, 2025, Opinion and Order. *See* Dkt. No. 24.

After being arrested on allegations of membership in the gang MS-13 and charged as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), an Immigration Judge ("IJ") ordered Petitioner's release on bond. Pet. ¶¶ 23, 29; Dkt. No. 14 ¶ 8. Three years later, on July 18, 2021, Petitioner was arrested by the Hempstead Police Department and charged with Assault in the Second Degree (NYPL § 120.05(2)), Menacing in the Second Degree (NYPL § 120.14(1)), and Criminal Possession of a Weapon in the Fourth Degree (NPYL

§ 265.01(2)). Dkt. No. 14 ¶ 13. Petitioner pled guilty to Attempted Reckless Assault (NYPL § 110-120.05), although denying the underlying conduct, and was sentenced to five years of probation. Dkt. No. 16 at 6. On April 17, 2023, while leaving a probation check-in, Petitioner was arrested by ICE, and Petitioner was later denied bond. Pet. ¶¶ 33–37.

On August 23, 2024, Petitioner filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Pet. at 1. Prior to the hearing before this Court, the parties stipulated that Petitioner was entitled to a bond hearing in which the Government bore the burden of proof, but they disagreed on the circumstances in which the presiding Immigration Judge should be required to consider alternatives to detention and Petitioner's ability to pay. Dkt. No. 12.

On November 20, 2025, this Court granted the Petition and ordered that, pursuant to the parties' stipulation, the Government must provide Petitioner with an individualized bond hearing before an immigration judge at which the Government bore the burden of establishing, by clear and convincing evidence, that Petitioner's continued detention was necessary, either because he posed a danger to the community or was a flight risk. Dkt. No. 24. As to the true subject of disagreement among the parties, the Court found that due process required the IJ to consider (i) whether any alternatives to detention could adequately address any danger or risk established by the Government and (ii) if a bond was to be set, the Petitioner's ability to pay. *Id.* at 10–11.

## II. December 3, 2025 Bond Hearing

On December 3, 2025, the IJ held a bond hearing pursuant to the parties' Stipulation and the Court's November 20, 2025 Order. *See* Dkt. No. 29-1 (Transcript of December 3, 2025 IJ Hearing) ("Tr."). The parties submitted documentary evidence in advance of the bond hearing. The Government's evidence consisted of, *inter alia*, (1) a Form I-213 (record of deportation/inadmissible alien); (2) Petitioner's rap sheet; (3) a 07/18/2021 incident report; (4) a

07/18/2021 criminal report; (5) a 07/18/2021 felony complaint; (6) an order of protection; (7) a 01/11/2022 superior court information; (8) a 01/05/2023 disposition certificate; (9) the IJ's 11/22/2024 removal order; (10) the Board of Immigration Appeal's ("BIA") 04/29/2025 decision upholding the removal order; (11) the BIA's 07/02/2025 decision denying reconsideration; and (12) the BIA's 09/22/2025 decision denying reopening. *See* Dkt. No. 29-4.

Petitioner's evidence included, *inter alia*, (1) two letters from different social workers describing Petitioner's PTSD, troubled upbringing, and prospect of reform; (2) a letter from Petitioner's aunt; (3) proof of compliance with probation; (4) receipts showing payments of fines and attendance at counseling classes; (5) declarations from Petitioner's sister and uncle; (6) a 2009 school award; (7) five articles and studies about recidivism, noncitizens' compliance with bond conditions, and other alternatives to detention; (8) proof of Petitioner's BIA appeal; and (9) a First Circuit decision, *López-Gómez v. Bondi*, 154 F.4th 1 (1st Cir. 2025). *See* Dkt. No. 29-3.

At the hearing, the IJ addressed the evidence and heard the parties' arguments, assigning the Government the burden of establishing by clear and convincing evidence that Petitioner was a flight risk or a danger to the community at the outset. Tr. 4:21–22. After both sides presented their arguments, the IJ determined that the Government had failed to carry that burden as to danger to the community but had met that burden as to flight risk. *Id.* 11:22–12:3. On the latter point, the IJ found compelling Petitioner's documented unwillingness to return to El Salvador and the fact that his administrative avenues for challenging his final order of removal had been effectively exhausted. *Id.* 12:4–13:8. The IJ further expressed his view that, given Petitioner's "history of ignoring the law," anything short of detention would be insufficient to ameliorate Petitioner's "very high flight risk." *Id.* 12:11–13:8. The IJ accordingly denied bond and rejected

the other proposed alternatives, specifically referencing Petitioner's history when doing so. *Id.* 13:7–8.

### III. Motion to Enforce

Instead of appealing the bond determination to the BIA, Petitioner filed the present motion to enforce, arguing that the bond hearing was constitutionally deficient and failed to comply with the Court's prior Order, and seeking a new bond hearing or release. Dkt. No. 29 ("Mot."). Petitioner argues that (1) the IJ failed to apply the correct standard because he improperly shifted the burden to Petitioner and because the Government could not, as a matter of law, have met its burden, in part because certain facts were misrepresented; and (2) the IJ failed to meaningfully consider alternatives to detention. *See* Mot. at 6–9. On May 15, 2026, July 13, 2026, and September 10, 2026, Petitioner filed letters of supplemental authority to alert the Court to various cases within this district in which Judges have found that IJs had conducted constitutionally inadequate bond hearings and either ordered release or made their own bond determinations using the proper standard. Dkt. Nos. 40–42.

For the reasons explained below, the Court disagrees with Petitioner and finds the cases provided as supplemental authority to be different in a key way: in the present matter, the IJ's rejection of alternatives to detention was made not in the abstract, but with due consideration of Petitioner's individual circumstances and, in particular, his history of disregarding the law.

## DISCUSSION

### I. LEGAL STANDARD

Generally speaking, district courts are barred from reviewing an IJ's bond determination. *See* 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the grant, revocation, or denial of bond

or parole"). While the Court's scope of review is necessarily narrow, a court that issues an order retains jurisdiction to enforce that order. *See, e.g.*, *Luciano-Jimenez v. Catletti*, No. 26-CV-3546 (LJL), 2026 WL 1831906, at *4 (S.D.N.Y. June 25, 2026) ("[A] federal court always retains jurisdiction to enforce its lawful judgments, including habeas judgments, [and] the court has the authority to see that its judgment is fully effectuated.")..[1] That is because "federal courts have a cardinal interest in ensuring strict compliance with their orders." *Bray v. City of New York*, 356 F. Supp. 2d 277, 287 (S.D.N.Y. 2004).

In reviewing a motion to enforce its own order, the Court's task is only "to determine whether [the Government] complied with this Court's order, not to review the hearing evidence de novo." *G.F.F. v. Francis*, No. 25-CV-7368 (JGK), 2026 WL 924072, at *3 (S.D.N.Y. Apr. 4, 2026). A district court must be "mindful of its obligation to afford a degree of deference to the factfinder's determinations, and not to overstep its bounds and set aside an immigration judge's bond determination on discretionary or evidentiary grounds." *Arana v. Barr*, No. 19-CV-7924 (PGG) (DCF), 2020 WL 2094098, at *7 (S.D.N.Y. May 1, 2020). In other words, the inquiry is not whether this Court would have reached the same conclusion, but rather whether, during the Petitioner's bond hearing, the IJ properly assigned the burden of proof to the Government, applied that burden, and, once he determined the burden had been met, meaningfully considered alternatives to detention.

## II. ANALYSIS

The oral transcript of the December 3, 2025 hearing shows that the IJ "reviewed the evidence, heard arguments from both sides, and came to a legally permissible conclusion in light

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

of the available evidence." *Medley v. Decker*, No. 18-CV-7361 (AJN), 2020 WL 1033344, at *3 (S.D.N.Y. Mar. 3, 2020). The IJ (1) required the Government to prove by clear and convincing evidence that Petitioner's detention was necessary; and (2) after finding the Government had met that burden on risk of flight (though not on dangerousness), meaningfully considered alternatives to detention. *See generally* Tr. The IJ's analysis also sufficiently explained his determinations. *See Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005) (requiring "a certain minimum level of analysis from the IJ and BIA opinions"); *Wu Lin v. Lynch*, 813 F.3d 122, 129 (2d Cir. 2016) (observing that the Second Circuit "require[s] an IJ to give specific, cogent reasons to support rulings.").

**A. The IJ Applied the Correct Legal Standard as Directed by the Court**

The IJ adequately complied with this Court's November 20, 2025 Order. "The key inquiry in determining whether the Immigration Judge complied with the Court's Order is whether . . . the Immigration Judge relied upon proof that could not possibly establish by clear and convincing evidence—as a matter of law—that [Petitioner] was a danger to the community" or a flight risk. *Medley*, 2020 WL 1033344, at *2. Clear and convincing evidence "means something more than preponderance of the evidence, and something less than beyond a reasonable doubt." *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). The transcript of the hearing shows that the IJ understood the "clear and convincing" standard applied and that the Government bore the burden to meet it; the IJ did not impermissibly shift the burden to Petitioner. The IJ started by admitting the November 20 Order as Exhibit 1 and noting its finding: "where the burden is on the government to demonstrate by clear and convincing evidence Respondent is a danger and/or flight risk and requiring alternatives to detention if feasible." Tr. 2:22–3:1. At several points throughout the IJ's analysis, he made clear that the

Government bore the burden and that he was considering the evidence with that burden in mind. *See* Tr. 4:21–22 (“Government, it’s your burden.”); 10:18–19 (“Government, it’s your burden” (after hearing Petitioner’s arguments)); 12:1–5 (“I don’t find that . . . the Government has established by clear and convincing evidence, he’s a danger to the community. But I do think they’ve established by clear and convincing evidence he’s a very high flight risk.”); 13:4–8 (“And I think all of that combined together provides clear and convincing evidence that the Respondent is a very high flight risk.”); 14:7–15 (“after reviewing all the evidence and listening to the arguments, I have found that the Government did not establish, by clear and convincing evidence, that you are a danger to the community. However, they have established by clear and convincing evidence that you are flight risk and that alternatives to detention are insufficient to mitigate the flight risk.”).

The fact that the IJ found that the Government did not meet its burden as to danger to the community, but did as to flight risk, further suggests that the IJ understood and applied the correct burden to the Government with appropriate discernment. The Court therefore cannot agree that the IJ shifted the burden to Petitioner or that the evidence was insufficient to support a finding of flight risk by clear and convincing evidence as a matter of law.[2]

[2] Petitioner also claims that the “IJ relied on serious misrepresentations of fact by DHS without reviewing the evidence or allowing counsel for [Petitioner] to correct the record.” Mot. at 13–14. Petitioner takes issue with the Government’s assertion that Petitioner did not have any additional “negative information subsequent to his conviction” because he has been detained since conviction, when, in reality, he has not been detained for the entire time period since his conviction. Tr. 10:24; 11:8–16; Mot. at 13. As a starting point, “we presume that the IJ has considered all the evidence unless the record compels a different conclusion.” *Ramirez Lopez v. Bondi*, No. 24-CV-s2354, 2025 WL 2945660, at *2 (2d Cir. Oct. 1, 2025) (summary order) (quoting *Xiao Ji Chen v. U.S. Dep’t of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2006)). In any event, the IJ in no way relied on the representation in contention: the decision was anchored in Petitioner’s criminal record, which is undisputed.

**B. The IJ Adequately Considered Alternatives to Detention**

The Court likewise disagrees that the IJ did not meaningfully consider alternatives to detention. To find otherwise, the Court must ascertain an "apparent lack of any meaningful consideration at all as to whether there were alternatives to detention." *Mendoza v. Noem*, No. 26-CV-1260 (LJL), 2026 WL 1470652, at *7 (S.D.N.Y. May 26, 2026). That is not what happened here. To the contrary, after acknowledging the Government's burden to "requir[e] alternatives to detention if feasible," the IJ combed through each of Petitioner's proposed alternatives before determining that they "aren't going to be sufficient" to ameliorate the "very high flight risk" posed by Petitioner. Tr. 3:1; 11:22–12:5.

The IJ's consideration of alternatives was neither cursory nor generalized when understood in the context of the Petitioner's history of "ignoring the law," which the IJ considered to be a salient factor militating against the efficacy of each proposed alternative. For each proposal—including curfew, an ankle monitor, and bond—the IJ stated his belief that this particular Petitioner would seek to evade the restriction because of his historical disregard for the law. *See* Tr. 12:11–13:8. While Petitioner may disagree with the weight the IJ assigned to this factor and with the conclusion reached by the IJ, the Court cannot conclude that the IJ could not have reached this conclusion as a matter of law, given the evidence before him.

Finally, the Court is aware of the cases in which judges in this district have ordered petitioners released where the record indicates that the presiding IJs failed to comply with their court-ordered procedures, including the cases Petitioner provides as supplemental authority. Indeed, the undersigned recently reached that very conclusion in a case handled while on Part I duty. *See Eltayeb v. Genalo et al.*, No. 26-CV-06090-VEC (S.D.N.Y. Aug. 23, 2026), at Dkt. No. 25. However, in the present case, as described above, the IJ expressly considered various

alternatives to detention and delineated his reasons why they would not, in his view, suffice for this particular detainee. The Court's review must be limited to whether the IJ followed the dictates of the Court's Order in good faith and did not err as a matter of law. The transcript demonstrates that standard was met. *Cf. Francis*, 2026 WL 924072, at *3 (finding failure to consider alternatives given determination that IJ dismissed the prospect of geolocation monitoring in a conclusory fashion and failed to expressly consider other alternatives); *Mendoza*, 2026 WL 1470652, at *7 (finding error where IJ merely asserted "bare conclusion that there were no alternatives" with no demonstration that he "actually considered any"); *Espinoza v. Maldonado*, No. 26-CV-01007 (RER), 2026 WL 1623056, at *3 (E.D.N.Y. June 5, 2026) (finding consideration of alternatives deficient where "no mention [of] any specific alternatives"); *Fernandez Aguirre v. Barr*, No. 19-CV-7048 (VEC), 2019 WL 4511933, at *5 (S.D.N.Y. Sept. 18, 2019) (granting motion to enforce where IJ's ruling was "utterly [de]void of any discussion of [] non-incarceratory measures, such as home detention, electronic monitoring, and so forth"); *R.R.M.C. v. Decker*, No. 22-CV-2952 (LGS), 2022 WL 4639674, at *5 (S.D.N.Y. Sept. 30, 2022) (finding failure to consider alternatives where IJ "does not mention any specific alternatives or explain why any are insufficient.").

## CONCLUSION

As previously explained, Section 1226(e) "precludes judicial review of the IJ's weighing of evidence and factual findings" regarding a Petitioner's bond. *Arevalo-Guasco v. Dubois*, 788 F. App'x 25, 27 (2d Cir. 2019). The Court is not empowered to sit as an appellate court or substitute its judgment for that of the IJ, but rather only to ask whether the IJ has followed the Court's Order in good faith. Based on careful review of the December 3, 2025 transcript, the

bond hearing afforded to Petitioner meets that standard. Accordingly, Petitioner's motion to enforce is DENIED. The motion at Dkt. No. 42 is DENIED as moot.

Dated: September 15, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge